UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Type text here

KEITH DURR,

Plaintiff,                          Case No. 1:23-cv-1286

v.                                                      Honorable Robert J. Jonker

UNKNOWN VANDERWIEL et al.,

Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without a motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined all named Defendants *except* Defendants Vanderwiel, Brown, and Jones.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Plaintiff's Fourth Amendment claims,

Fourteenth Amendment procedural and substantive due process claims, Fourteenth Amendment equal protection claims, claims under 18 U.S.C. § 1001, and federal claims regarding violation of the MDOC's policies against remaining Defendants Vanderwiel, Brown, and Jones. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims premised on the issuance of the July 2022 misconduct charge by Defendant Vanderwiel and the issuance of the July 15, 2022, and August 15, 2022, misconduct charges by non-party officers Betts and Purcey, respectively. Any intended state law claims will be dismissed without prejudice. Plaintiff's First Amendment retaliation claims against Defendants Vanderwiel, Brown, and Jones regarding the August 13, 2022, and January 29, 2023, misconduct charges will remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MCF personnel in their individual and official capacities: Correctional Officer Unknown Vanderwiel, Deputy Warden Jeanine Winger, Unknown Caltagirone, Unknown Larson, Unknown Alvarez, Unknown Thompson, Sergeant Unknown Brown, Lieutenant Unknown Trefil, Lieutenant Unknown Jones, Sergeant Unknown Brock, Sergeant Unknown Sabec, Captain Unknown Knapp, and Sergeant Unknown Rodriguez. (Compl., ECF No. 1, PageID.1–3.)

In Plaintiff's complaint, he alleges that in July of 2022, Defendant Vanderwiel issued Plaintiff a class I misconduct report, "but the misconduct was thr[own] out [be]cause Defendant

Vanderwiel wrote the wrong time and inmate number."[1] (*Id.*, PageID.3.) Defendant Vanderwiel was upset and "told Plaintiff he was gonna make sure Plaintiff don't never get found not guilty for a misconduct again." (*Id.* (grammar in original retained).) Defendant Vanderwiel further stated that Plaintiff should have pleaded guilty and that Vanderwiel and his coworkers were going to "make sure Plaintiff['s] jailing would be hard at (MCF)." (*Id.* (parentheses in original).)

On July 15, 2023, non-party officer Betts issued Plaintiff a substance abuse misconduct charge "for having pasta sauce in his bowl which is sold on [the] prisoner store list." (*Id.*, PageID.3–4.) Plaintiff was found guilty on August 15, 2022, and was sentenced to five days of toplock and 15 days of loss of privileges. (*Id.*, PageID.4.)

On August 13, 2022, Defendant Vanderwiel "shook down" Plaintiff's cell, "found alcohol contraband," and issued Plaintiff a class I misconduct charge for the alcohol contraband. (*Id.*) Two days later, non-party officer Purcey also found "alcohol contraband" and issued Plaintiff a class I misconduct charge. (*Id.*) On September 7, 2022, Plaintiff was found guilty of the class I misconduct issued by Purcey, but Plaintiff was found not guilty of the class I misconduct issued by Defendant Vanderwiel because Vanderwiel "wrote the wrong time." (*Id.*)

Subsequently, on January 29, 2023, Defendant Vanderwiel issued Plaintiff a class I misconduct report "incorrectly" because Vanderwiel "wrote the wrong inmate number and no supervisory officer made verification of the substance." (*Id.*) On February 15, 2023, Defendant Jones changed the January 29, 2023, misconduct report to add that Defendant Brown was "the supervisory officer who verified the substance." (*Id.*) Plaintiff claims that Defendants Vanderwiel and Brown do not work the same shift, and that "Defendant Vanderwiel wrote the class 1

---

[1] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

misconduct before Defendant Brown's shift." (*Id.*) On February 17, 2023, Plaintiff was found guilty of the class I misconduct and sentenced to thirty days of loss of privileges and thirty days on toplock. (*Id.*)

On March 3, 2023, Defendant Alvarez wrote Plaintiff "a fraudulent misconduct [that] misrepresented the facts."[2] (*Id.*) Specifically, Defendant Alvarez stated that Plaintiff "walk[ed] around the top level and base level of unit 5 for [one hour] plus 10 minutes, which was not true." (*Id.*) The following day, March 4, 2023, at 10:50 a.m., "Plaintiff was called to the desk in Unit 5." (*Id.*) Plaintiff had a verbal altercation with Defendant Alvarez, and Defendants Alvarez and Thompson then "called to the control center to tell Defendant S[ergeant] Sabec [that] Plaintiff need[ed] to be placed in segregation." (*Id.*, PageID.5.) Ten minutes later, Plaintiff was reviewed on the March 3, 2023, misconduct report, and Defendant Sabec ordered that Plaintiff be placed in segregation. (*Id.*)

Defendant Thompson and a non-party correctional officer escorted Plaintiff to the segregation shower area. (*Id.*) At that time, Plaintiff requested a lieutenant or sergeant, and Defendant Trefil, a lieutenant, came to the shower area. (*Id.*) Plaintiff informed Defendant Trefil that Plaintiff was "unlawfully placed in the segregation shower area," and in response, Defendant Trefil stated that Plaintiff was "in the right place n[*****], I'm gonna teach you a lesson n[*****]." (*Id.* (asterisks added).) Plaintiff alleges that there was "nowhere to sit in [the] segregation shower area due to the fact [there] was urine and feces all over," and "Plaintiff had to

---

[2] In his complaint, Plaintiff states that this occurred on March 13, 2023. (Compl., ECF No. 1, PageID.4.) However, based on the dates that follow in the factual allegations in the complaint and the misconduct report that is attached to Plaintiff's complaint, it appears that the date of March 13, 2023, is a typographical error. (*See id.*, PageID.4–7; ECF No. 1-1, PageID.32.) Instead, it appears that Defendant Alvarez wrote Plaintiff the misconduct report in question on March 3, 2023.

stand up for 8 hours in segregation, while white staff members laughed and joked at Plaintiff." (*Id.*)

Plaintiff was found guilty of the March 3, 2023, misconduct charge that was issued by Defendant Alvarez, and he appealed the class II misconduct conviction to Defendant Winger. (*Id.*, PageID.10.) Defendant Winger upheld the misconduct conviction. (*Id.*)

Thereafter, on March 5, 2023, Defendant Larson "shook down" Plaintiff's cell "due to retaliation" because Defendant Alvarez had told Defendants Caltagirone and Larson "that Plaintiff [had] called [Alvarez] a b[****]." (*Id.*, PageID.5 (asterisks added).) Defendant Larson "broke Plaintiff's personal property, destroyed his personal property, took a lot of Plaintiff's personal property and damaged Plaintiff's property," including "legal documents and books" that Plaintiff needed to litigate a civil rights action in the Eastern District of Michigan and materials from Plaintiff's criminal case. (*Id.*, PageID.5–6.) Later that same day, when Defendant Alvarez arrived for her shift, she "push[ed] her panic button for Plaintiff [so he would] go to segregation." (*Id.*, PageID.6.) Defendants Trefil and Rodriguez escorted Plaintiff to segregation, and Defendant Trefil said, "I told you n[*****] I was gonna teach you a lesson." (*Id.* (asterisks added).) Plaintiff alleges that he was "held unlawfully in segregation for 12 hours," "without food, clean water, nowhere to sit, no sleep and no shower." (*Id.*)

On March 6, 2023, Plaintiff told his mother and sister about MCF staff members' actions. (*Id.*, PageID.7.) The following day, Plaintiff's mother and sister called the business office at MCF to report the mistreatment of Plaintiff, and they talked to Defendant Winger and non-party Warden Schiebner. (*Id.*)

On March 9, 2023, Plaintiff left his identification card in the law library, and Defendants Larson and Caltagirone threw Plaintiff's identification in the trash. (*Id.*) Plaintiff attempted to

resolve the issue with Defendant Winger and non-party Warden Schiebner, and Plaintiff wrote multiple grievances "about MCF staff members' unprofessional behavior." (*Id.*, PageID.7–8.)

On July 4, 2023, Defendant Larson worked in Unit 5, and Defendant Larson said to Plaintiff "I'm back, we gonna get you n[*****]." (*Id.*, PageID.8 (asterisks added).) Later that same day, Defendant Brock and a non-party correctional officer trashed Plaintiff's cell. (*Id.*) During the "shake down," Defendant Brock found two bowls "containing [an] orange substance," and Defendant Caltagirone wrote Plaintiff a substance abuse misconduct report for the substance in the bowls. (*Id.*) Plaintiff asked Defendant Brock "why staff members [were] messing with him," and "Defendant Brock said this is retaliation for all the grievances you wrote on MCF staff." (*Id.*) On July 4, 2023, Plaintiff also "submitted a formal complaint" to Defendant Winger. (*Id.*, PageID.10.) Plaintiff claims that Defendant Winger "failed to respond to both formal complaints" and failed "to take any action to resolve these issues." (*Id.*)

On July 8, 2023, Defendant Caltagirone retaliated against Plaintiff by "shaking down" Plaintiff's cell due to Plaintiff's sister reporting Caltagirone for "calling Plaintiff a n[*****]." (*Id.*, PageID.8 (asterisks added).) Thereafter, Plaintiff was waiting in line for the phone, and Defendant Caltagirone "told Plaintiff to have a seat in the dayroom." (*Id.*) Plaintiff responded that he did not have to do so because he was waiting for the phone. (*Id.*, PageID.8–9.) "Defendant Caltagirone hit his panic button . . . for Plaintiff to be sent to segregation and wrote a[n] insolence misconduct to justify his action[s]." (*Id.*, PageID.9.)

On July 25, 2023, Plaintiff was found not guilty of the July 4, 2023, substance abuse misconduct that was issued by Defendant Caltagirone "[be]cause Defendant . . . Brock had prior involvement before verification of [the] contraband." (*Id.*) The following day, Defendant Caltagirone sent a non-party correctional officer to "shake down Plaintiff's cell." (*Id.*)

On August 20, 2023, Defendant Larson "wrote an entrapment class II misconduct on Plaintiff." (*Id.*) On August 26, 2023, Plaintiff was found not guilty of the misconduct charge. (*Id.*)

Plaintiff claims that he was retaliated against by Defendants Larson and Caltagirone when he was moved to Unit 2 on August 23, 2023. (*Id.*) Two days later, on August 25, 2023, a non-party correctional officer "shook down Plaintiff's cell," but nothing was found. (*Id.*) On August 27, 2023, the same non-party correctional officer conducted another shakedown of Plaintiff's cell. (*Id.*)

Plaintiff alleges that the "'word' at MCF . . . is [that] Plaintiff . . . [is a] n[*****] prisoner [and] is a troublemaker." (*Id.*, PageID.10 (asterisks added).) Plaintiff also alleges that "all Defendants are white except two Defendants." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment to be free from retaliation and to access the courts, and violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. (*See id.*, PageID.11–23.) Plaintiff also avers that Defendants violated 18 U.S.C. § 1001, obstructed justice, and violated the MDOC's policies and state law. (*See id.*) As relief, Plaintiff seeks compensatory, punitive, and nominal damages, as well as injunctive relief. (*Id.*, PageID.23.)

## II.   Misjoinder

### A.   Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being

filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Vanderwiel is the first Defendant named in the case caption of the complaint, and the first factual allegations in the complaint involve Defendant Vanderwiel.[3] (*See*

---

[3] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

Compl., ECF No. 1, PageID.1, 3.) Specifically, Plaintiff alleges that in July of 2022, Defendant Vanderwiel issued Plaintiff a class I misconduct report, "but the misconduct was thr[own] out [be]cause Defendant Vanderwiel wrote the wrong time and inmate number." (*Id.*, PageID.3.) Plaintiff claims that Defendant Vanderwiel told Plaintiff that he should have pleaded guilty and that Vanderwiel and his coworkers were going to "make sure Plaintiff's jailing would be hard at (MCF)." (*Id.* (parentheses in original).) Plaintiff next alleges that on August 13, 2022, Defendant Vanderwiel issued Plaintiff a class I misconduct report for alcohol contraband after Vanderwiel found alcohol while searching Plaintiff's cell. (*Id.*, PageID.4.) Plaintiff was found not guilty of the alcohol contraband misconduct because Vanderwiel "wrote the wrong time." (*Id.*) Thereafter, on January 29, 2023, Defendant Vanderwiel issued Plaintiff a class I misconduct report "incorrectly" because Vanderwiel "wrote the wrong inmate number and no supervisory officer made verification of the substance." (*Id.*) On February 15, 2023, Plaintiff alleges that Defendant Jones changed the January 29, 2023, misconduct report to add that Defendant Brown was "the supervisory officer who verified the substance." (*Id.*) Plaintiff claims that Defendants Vanderwiel and Brown do not work the same shift, and that "Defendant Vanderwiel wrote the class 1 misconduct before Defendant Brown's shift." (*Id.*) These allegations are the only allegations against Defendants Vanderwiel, Jones, and Brown. The remainder of Plaintiff's complaint describes subsequent, discrete incidents involving other officers at MCF; Defendants Vanderwiel, Jones, and Brown are not named in these subsequent events.

Plaintiff's allegations against Defendants Vanderwiel, Jones, and Brown are transactionally related; however, Plaintiff's allegations against Defendants Vanderwiel, Jones, and Brown are transactionally *unrelated* to Plaintiff's allegations against the other ten Defendants—Defendants Winger, Caltagirone, Larson, Alvarez, Thompson, Trefil, Brock, Sabec, Knapp, and

Rodriguez. Plaintiff appears to believe that all of the events at issue in the complaint are related because they occurred during his incarceration at MCF and because he believes that "all issues stem from 'retaliation'" (*id.*, PageID.3); however, Plaintiff's belief that all events in the complaint were retaliatory does not transform separate, subsequent events into events that arise out of the same transaction or occurrence. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation for some prior incident; however, such incidents are not necessarily transactionally related.

Here, the events with Defendants Winger, Caltagirone, Larson, Alvarez, Thompson, Trefil, Brock, Sabec, Knapp, and Rodriguez are not transactionally related to Plaintiff's allegations against Defendants Vanderwiel, Jones, and Brown. Accordingly, the Court concludes that Defendants Vanderwiel, Jones, and Brown are properly joined because Plaintiff's claims against these Defendants arise out of the same transaction and occurrence. However, Plaintiff has improperly joined Defendants Winger, Caltagirone, Larson, Alvarez, Thompson, Trefil, Brock, Sabec, Knapp, and Rodriguez.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined ten Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674,

682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's claims against the misjoined Defendants occurred starting in March of 2023. (*See* Compl., ECF No. 1, PageID.4.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if the claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Winger, Caltagirone, Larson, Alvarez, Thompson, Trefil, Brock, Sabec, Knapp, and Rodriguez because they are misjoined, and the Court will dismiss Plaintiff's claims against these Defendants without prejudice to the institution of new, separate lawsuits.[4] *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."). If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*.

### III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[4] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at one correctional facility does mean that all claims arising out these events are properly joined.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, Plaintiff alleges that Defendants Vanderwiel, Brown, and Jones violated his First Amendment rights by retaliating against him, and violated his Fourth and Fourteenth Amendment rights. Additionally, Plaintiff alleges that Defendants Vanderwiel, Brown, and Jones violated 18 U.S.C. § 1001, the MDOC's policies, and state law.[5] The Court addresses each of Plaintiff's claims against the properly joined Defendants in turn.

---

[5] When setting forth his legal claims, Plaintiff also alleges that his First Amendment right to access the courts and his Fifth and Eighth Amendment rights were violated. (Compl., ECF No. 1, PageID.15–16, 18–20.) Additionally, Plaintiff alleges that Defendant Larson obstructed justice. (*Id.*, PageID.20.) Plaintiff does not allege any facts showing that Defendants Vanderwiel, Brown, and Jones interfered with his right to access the courts, violated his Fifth and Eighth Amendment

### A.    First Amendment Retaliation Claims

Plaintiff contends that Defendants Vanderwiel, Brown, and Jones retaliated against him in violation of his First Amendment rights. (Compl., ECF No. 1, PageID.11–12.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    July 2022 Misconduct Charge Issued by Defendant Vanderwiel

Plaintiff first alleges that Defendant Vanderwiel retaliated against him by issuing Plaintiff a class I misconduct charge in July of 2022. (Compl., ECF No. 1, PageID.3.) Plaintiff states that "the misconduct was thr[own] out [be]cause Defendant Vanderwiel wrote the wrong time and inmate number." (*Id.*) Defendant Vanderwiel was upset, and "told Plaintiff he was gonna make sure Plaintiff don't never get found not guilty for a misconduct again." (*Id.* (grammar in original retained).) Defendant Vanderwiel further stated that Plaintiff should have pleaded guilty and that Vanderwiel and his coworkers were going to "make sure Plaintiff['s] jailing would be hard at (MCF)." (*Id.* (parentheses in original).)

---

rights, and obstructed justice. Instead, these claims are brought against the misjoined Defendants. Accordingly, any intended access to the courts claims, Fifth Amendment claims, Eighth Amendment claims, and obstruction of justice claims against the properly joined Defendants are subject to dismissal for failure to state a claim.

Here, Plaintiff's retaliation claim regarding the July 2022 misconduct charge fails at the first step because Plaintiff does not allege that he engaged in any protected conduct prior to the issuance of the misconduct charge. Instead, Plaintiff merely alleges the ultimate fact of retaliation, but he fails to allege any factual allegations to support his claim. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). Accordingly, for these reasons, Plaintiff's First Amendment retaliation claim premised on the July 2022 misconduct charge issued by Defendant Vanderwiel will be dismissed.

### 2. July 15, 2022, Misconduct Charge Issued by Non-Party Officer Betts and August 15, 2022, Misconduct Charge Issued by Non-Party Officer Purcey

Plaintiff next alleges that non-party officer Betts, a co-worker of Defendant Vanderwiel, issued Plaintiff a substance abuse misconduct charge on July 15, 2022, "for having pasta sauce in his bowl which is sold on [the] prisoner store list." (Compl., ECF No. 1, PageID. 3–4.) Plaintiff states that he was found guilty of this misconduct charge on August 13, 2022. (*Id.*, PageID.4.) Plaintiff also alleges that non-party officer Purcey issued Plaintiff an alcohol contraband misconduct charge on August 15, 2022, and that Plaintiff was found guilty of this misconduct charge on September 7, 2022. (*Id.*)

Plaintiff alleges no facts about why he believes the issuance of these misconduct charges were retaliatory. Nonetheless, liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to claim that the two misconduct charges were issued in retaliation for Plaintiff's challenge to, and ultimate not guilty finding for, the July 2022 misconduct charge issued by Defendant Vanderwiel, as explained below, he fails to state a claim. Specifically, even assuming, without deciding, that Plaintiff's actions challenging the prior July 2022 misconduct charge constituted protected conduct, Plaintiff fails to allege any *facts* showing that the non-party officers who issued the July 15, 2022, and August 15, 2022, misconduct charges had any

16

knowledge of the events surrounding Plaintiff's prior July 2022 misconduct charge. Under these circumstances, although the issuance of the July 15, 2022, misconduct charge would constitute adverse action, Plaintiff's allegations regarding the third element—retaliatory motive—fall short.

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Although the July 2022 misconduct charge issued by Defendant Vanderwiel apparently preceded the July 15, 2022, misconduct charge issued by non-party officer Betts and preceded the August 15, 2022, misconduct charge issued by non-party officer Purcey, Plaintiff's allegations do not support an inference that the temporal proximity is "significant enough" here. *Muhammad*, 379 F.3d at 417–18 (citation omitted). Indeed, other than suggesting that the issuance of the July 2022 misconduct charge preceded the issuance of the other two misconduct charges, Plaintiff alleges no facts suggesting a connection between the July 2022 misconduct charge and the subsequent two other misconduct charges. Under these circumstances, Plaintiff's allegations do not support an inference that the July 15, 2022, misconduct charge and the August 15, 2022, misconduct charge were motivated by retaliation. Accordingly, Plaintiff fails to state a First Amendment retaliation claim premised on the issuance of the July 15, 2022, and August 15, 2022, misconduct charges issued by non-party officers Betts and Purcey, respectively.

### 3. August 13, 2022, Misconduct Charge and January 29, 2023, Misconduct Charge Issued by Defendant Vanderwiel

Finally, Plaintiff alleges that on August 13, 2022, Defendant Vanderwiel "shook down" Plaintiff's cell, "found alcohol contraband," and issued Plaintiff a class I misconduct report for the

alcohol contraband. (Compl., ECF No. 1, PageID.4.) Plaintiff was ultimately found not guilty of the class I misconduct because Defendant Vanderwiel "wrote the wrong time." (*Id.*) Subsequently, on January 29, 2023, Defendant Vanderwiel issued Plaintiff a class I misconduct report "incorrectly" because Vanderwiel "wrote the wrong inmate number and no supervisory officer made verification of the substance." (*Id.*) On February 15, 2023, Defendant Jones changed the January 29, 2023, misconduct report to add that Defendant Brown was "the supervisory officer who verified the substance." (*Id.*) Plaintiff claims that Defendants Vanderwiel and Brown do not work the same shift, so Defendant Brown could not have verified the substance. (*Id.*) Ultimately, Plaintiff was found guilty of the January 29, 2023, misconduct charge. (*Id.*)

As to the first element of a retaliation claim, the Court assumes, without deciding, that Plaintiff's challenge to, and ultimate not guilty finding for, the July 2022 misconduct charge issued by Defendant Vanderwiel constituted protected conduct. *See, e.g.*, *Seibert v. McQuiggin*, No. 2:10-cv-347, 2011 WL 447030, at *4 (W.D. Mich. Feb. 4, 2011) (discussing that allegations regarding a prisoner-plaintiff exercising his right to contest a misconduct charge more closely resembles protected speech and may satisfy the first element of a retaliation claim). *But see, e.g.*, *Taylor v. Fischer*, 841 F. Supp. 2d 734, 737 (W.D.N.Y. 2012) (concluding that "[b]eing found not guilty [of a prison misconduct charge], however, is not protected activity, or for that matter, 'activity' at all, on plaintiff's part"); *Miller v. Lucas*, No. 3:16-cv-01947, 2018 WL 4441534, at *4 (M.D. Pa. July 20, 2018), *report and recommendation adopted*, No. 3:16-cv-1947, 2018 WL 4404675 (M.D. Pa. Sept. 17, 2018) (finding that "[b]eing found not guilty of a misconduct charge is not conduct protected by the First Amendment" (citations omitted)). Further, the issuance of the August 13, 2022, and January 29, 2023, misconduct charges constituted adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can

"constitute[] an adverse action"). As to the third element of a retaliation claim, although Plaintiff has by no means proven this element, the Court concludes that at this early stage of the proceedings, Plaintiff's allegations sufficiently support an inference that Defendant Vanderwiel acted with a retaliatory motive when he issued the August 13, 2022, misconduct charge, and that Defendants Vanderwiel, Brown, and Jones may have acted with a retaliatory motive with respect to the January 29, 2023, misconduct charge and subsequent changes to the charge.

Therefore, although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's First Amendment retaliation claims against Defendants Vanderwiel, Brown, and Jones regarding the August 13, 2022, and January 29, 2023, misconduct charges may not be dismissed on initial review.[6]

### B.      Fourth Amendment Claims

Plaintiff alleges that his Fourth Amendment rights were violated. (Compl., ECF No. 1, PageID.2.) As an initial matter, Plaintiff alleges no facts suggesting that Defendants Jones and Brown violated his Fourth Amendment rights. Therefore, any intended Fourth Amendment claims against Defendants Jones and Brown are subject to dismissal for failure to state a claim. Further, to the extent Plaintiff intended to claim that Defendant Vanderwiel violated Plaintiff's Fourth Amendment rights when Vanderwiel searched Plaintiff's cell on several occasions, as explained below, Plaintiff fails to state a claim.

---

[6] Under certain circumstances, the factual findings at class I misconduct hearings have preclusive effect in this Court. *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013); *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014); *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). The Court's determination that Plaintiff's retaliation claim may not be dismissed at this early stage of the proceedings does not foreclose a subsequent finding that Plaintiff's retaliation claims are in fact precluded as a result of the factual findings at the relevant misconduct hearings.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Court held that the Fourth Amendment "does not protect against seizures in a prison cell." *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit the search of Plaintiff's cell, and it did not prevent the confiscation of any items in Plaintiff's cell that appeared to be contraband. Furthermore, to the extent that Plaintiff intended to raise any other Fourth Amendment claims, Plaintiff alleges no facts to plausibly suggest that Defendants' actions implicated the protections of the Fourth Amendment. *See Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."); *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Accordingly, for these reasons, Plaintiff's Fourth Amendment claims will be dismissed.

### C.     Fourteenth Amendment Claims

#### 1.     Due Process Clause Claims

Plaintiff claims that Defendants Vanderwiel, Brown, and Jones "forged" Plaintiff's January 29, 2023, class I substance abuse misconduct report when they stated that Defendant Brown had verified the substance at issue in the report despite the fact that Brown was not working when Vanderwiel found the substance. (Compl., ECF No. 1, PageID.17.) Plaintiff alleges that this violated his due process rights. (*See id.*, PageID.16–17.)

#### a.     Procedural Due Process Claims

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth

the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff states that on February 17, 2023, he was found guilty of the January 29, 2023, class I substance abuse misconduct charge. (*See* Compl., ECF No. 1, PageID.4; *see also* ECF No. 1-1, PageID.30–31.) A class I misconduct is a "major" misconduct. *See* MDOC Policy Directive 03.03.105, attach. A (eff. Apr. 18, 2022). Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34; *see also* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber =614438 (last visited Feb. 15, 2024). Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. Mich. Comp. Laws § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to

the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412

(6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and

significant" deprivation. *Sandin*, 515 U.S. at 484. Plaintiff states that as a result of his conviction

for the January 29, 2023, misconduct charge, Plaintiff received thirty days of loss of privileges and

thirty days on toplock. (Compl., ECF No. 1, PageID.4.)

Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves

the loss of various privileges, such as access to the day room, exercise facilities, group meetings,

"[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law

library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive

03.03.105, Attach. E (eff. Apr. 18, 2022). Federal courts consistently have found that prisoners

have no constitutionally protected liberty interest in prison vocational, rehabilitation, and

educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*,

429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner

classification and eligibility for rehabilitative programs, even where inmate suffers "grievous

loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no

constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–

54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation);

*Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a

rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v.

Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right

to rehabilitative services).

Furthermore, as to Plaintiff's placement on toplock, toplock is a restriction of the prisoner to his own cell, room, or bunk and bunk area. *See* MDOC Policy Directive 03.03.105 ¶¶ OOO–QQQ (eff. Apr. 18, 2022). Courts have held that reclassification to toplock for a short period of time does not "implicate a due process liberty interest," *see, e.g.*, *Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841, at *4–5 (6th Cir. May 3, 2019) (citation omitted), and that placement on toplock for thirty days does not constitute an atypical and significant deprivation. *See, e.g.*, *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (holding that thirty days on toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'" (citation omitted)).

Accordingly, for the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim.

### b. Substantive Due Process Claims

To the extent that Plaintiff intended to raise a substantive due process claim, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

24

In this action, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. Based on the facts alleged by Plaintiff, it is clear that Plaintiff believes that Defendants Vanderwiel, Brown, and Jones falsely stated that Brown had verified the identity of the substance that formed the basis of Plaintiff's January 29, 2023, substance abuse misconduct charge. However, Plaintiff does not dispute that Defendant Vanderwiel found a substance in Plaintiff's cell. (*See* Compl., ECF No. 1, PageID.4.) That is, Plaintiff does not allege that he was falsely *issued* the misconduct charge *in the first place*. Instead, Plaintiff claims that Defendant Vanderwiel "incorrectly" wrote the misconduct charge because Vanderwiel "wrote the wrong inmate number and no supervisory officer made verification of the substance." (*Id.*) Plaintiff alleges that *after* the misconduct charge was issued, Defendants Vanderwiel, Brown, and Jones falsely stated that Brown had verified the identity of the substance. (*See id.*) While the Court does not condone Defendants' actions, under the circumstances alleged by Plaintiff, his allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016);

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly

dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment applies to protect Plaintiff's right to be free from receiving retaliatory misconduct charges.

Accordingly, for these reasons, any intended substantive due process claims will be dismissed.

### 2.     Equal Protection Clause Claims

Plaintiff alleges that "all Defendants are white except two Defendants." (Compl., ECF No. 1, PageID.10.) Plaintiff also alleges that the "'word' at MCF . . . is [that] Plaintiff . . . [is a] [racial slur] prisoner [and] is a troublemaker." (*Id.*) Although not specifically articulated by Plaintiff, the Court construes Plaintiff's statements to raise an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). "'Similarly situated' is a term of art—a

comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated. Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### D.    Claims Under 18 U.S.C. § 1001

Plaintiff states that he is bringing claims under 18 U.S.C. § 1001 for "fraudulent statements." (Compl., ECF No. 1, PageID.15.) However, "18 U.S.C. § 1001 is a criminal statute that does not provide a private cause of action." *Setzer v. First Choice Lending Servs., LLC*, No. 18-5192, 2018 WL 7500477, at *3 (6th Cir. Sept. 10, 2018) (citations omitted); *see, e.g.*, *Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 76 (D.C. Cir. 2017); *Flessner v. Michigan*, No. 1:19-cv-1035, 2020 WL 746843, at *3 (W.D. Mich. Feb. 14, 2020). Accordingly, Plaintiff's claims under 18 U.S.C. § 1001 will be dismissed.

### E.    Claims Regarding Violation of the MDOC's Policies and State Law

Plaintiff also alleges that Defendants Vanderwiel, Brown, and Jones violated the MDOC's policies and state law. (*See, e.g.* Compl., ECF No. 1, PageID.11, 16–17.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or the MDOC's policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215

(6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under § 1983.

Moreover, to demonstrate a violation of procedural due process, a plaintiff must show the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim and will be dismissed for failure to state a claim.

Furthermore, to the extent that Plaintiff intended to bring state law claims regarding the violation of the MDOC's policies or any other state laws, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, any intended state law claims are unrelated to Plaintiff's federal retaliation claims, which remain in the case. The balance of the relevant considerations therefore weighs against the continued exercise of supplemental

jurisdiction over the state law claims. Accordingly, any intended state law claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

<u>**Conclusion**</u>

As set forth above, the Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, the Court will drop as misjoined Defendants Winger, Caltagirone, Larson, Alvarez, Thompson, Trefil, Brock, Sabec, Knapp, and Rodriguez. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Additionally, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Fourth Amendment claims, Fourteenth Amendment procedural and substantive due process claims, Fourteenth Amendment equal protection claims, claims under 18 U.S.C. § 1001, and federal claims regarding violation of the MDOC's policies against remaining Defendants Vanderwiel, Brown, and Jones will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims premised on the issuance of the July 2022 misconduct charge by Defendant Vanderwiel and the issuance of the July 15, 2022, and August 15, 2022, misconduct charges by non-party officers Betts and Purcey, respectively. Any intended state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. Plaintiff's First Amendment retaliation claims against Defendants Vanderwiel, Brown, and Jones regarding the August 13, 2022, and January 29, 2023, misconduct charges remain in the case.

An order consistent with this opinion will be entered.

Dated:   __April 1, 2024__                              __/s/ Robert J. Jonker__
                                                                         Robert J. Jonker
                                                                         United States District Judge