UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH DURR #614438,

    Plaintiff,                                              Hon. Robert J. Jonker

v.                                                            Case No. 1:23-cv-1286

EDWIN VANDERWIEL, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on the Motion for Summary Judgment on the Basis of Exhaustion of Defendants Edwin VanderWeil, Adam Brown, and Timothy Jones. (ECF No. 24.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**, that Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**, and that this action be **terminated**.

**I. Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on December 7, 2023, against numerous MDOC employees based on events that occurred at Muskegon Correctional Facility (MCF) while Plaintiff was incarcerated there from July 2022 to August 2023. (ECF No. 1.) After analyzing the complaint for misjoinder of parties and claims and reviewing it pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c), the Court allowed Plaintiff's First Amendment retaliation claims against Defendants VanderWeil, Brown,

1

and Jones regarding the August 13, 2022, and January 29, 2023 misconduct tickets to proceed. (ECF No. 7 at PageID.117.)

Plaintiff alleges that in July of 2022, Defendant VanderWiel issued him a class I misconduct report, "but the misconduct was thr[own] out [be]cause Defendant VanderWiel wrote the wrong time and inmate number." (ECF No. 1 at PageID.3.) Defendant VanderWiel was upset and "told Plaintiff he was gonna make sure Plaintiff don't never get found not guilty for a misconduct again." (*Id.*) Defendant VanderWiel further stated that Plaintiff should have pleaded guilty and that VanderWiel and his coworkers were going to "make sure Plaintiff['s] jailing would be hard at (MCF)." (*Id.* (parentheses in original).)

On August 13, 2022, Defendant VanderWiel "shook down" Plaintiff's cell, "found alcohol contraband," and issued Plaintiff a class I misconduct charge for the alcohol contraband. (*Id.* at PageID.4.) Two days later, non-party officer Purcey also found "alcohol contraband" and issued Plaintiff a class I misconduct charge. (*Id.*) On September 7, 2022, Plaintiff was found guilty of the class I misconduct Purcey issued, but Plaintiff was found not guilty of the class I misconduct issued by Defendant VanderWiel because VanderWiel "wrote the wrong time." (*Id.*)

Subsequently, on January 29, 2023, Defendant VanderWiel issued Plaintiff a class I misconduct report "incorrectly" because VanderWiel "wrote the wrong inmate number and no supervisory officer made verification of the substance." (*Id.*) On February 15, 2023, Defendant Jones changed the January 29, 2023, misconduct report to add that Defendant Brown was "the supervisory officer who verified the substance." (*Id.*) Plaintiff claims that Defendants VanderWiel and Brown do not work the same shift, and that "Defendant Vander[W]iel wrote the class I misconduct before Defendant Brown's shift." (*Id.*) On February 17, 2023, Plaintiff was found

2

guilty of the class I misconduct and sentenced to 30 days' loss of privileges and 30 days on toplock. (*Id.*)

Defendants now seek summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies against them.

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting

3

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the generally applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the

4

prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants submit a Step III Grievance Report dated April 15, 2024, which shows the grievances arising out of MCF that Plaintiff filed from August 13, 2022, to approximately March 1, 2023, and exhausted through Step III. (ECF No. 25-3.) In addition, Defendants submit an affidavit from James Cooper, an MDOC Hearing Investigator at MCF, who attaches to his affidavit: (1) the misconduct ticket packet for the August 13, 2022 ticket; (2) the misconduct hearing packet for the January 29, 2023 ticket; and (3) the request for rehearing packet for the January 29, 2023 ticket. (ECF No. 25-4.)

The process for exhausting a claim that a misconduct ticket was retaliatory differs from the process set forth above. Decisions made in Class I misconduct hearings are non-grievable. MDOC Policy Directive 03.02.130 ¶ I(9). In addition, pursuant to Michigan law, "[a] prisoner aggrieved by a final decision or order of a hearings officer shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final

5

decision or order." M.C.L. § 791.255(1); see also MDOC Policy Directive 03.03.105 ¶ VVV (providing for appeal of a class I misconduct hearing officer's decision).

In *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011), the Sixth Circuit confirmed that claims concerning decisions made in the misconduct hearing process must be exhausted through that process, not the prison grievance procedure. *See Smith v. Goulet*, No. 1:17-CV-618, 2018 WL 3688468, at *2 (W.D. Mich. Aug. 3, 2018) (noting that "decisions made in hearings conducted by the office of policy and hearings, hearings and appeals division, and minor misconduct hearings are nongrievable" and that prisoners must raise issues concerning misconduct tickets in the misconduct hearing). Following *Siggers*, courts in both this district and the Eastern District of Michigan have concluded that, in order to properly exhaust a retaliatory misconduct ticket claim, the prisoner must raise that claim at the misconduct hearing and, if unsuccessful, in a motion or application for rehearing or in an appeal. *See, e.g.*, *Rush v. Newcomb*, No. 2:18-cv-23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted* 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019) (concluding that the plaintiff failed to exhaust because he "failed to assert any fact that could support a claim of retaliatory action at the time of his misconduct hearing, and he did not petition to reopen his hearing"); *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019), *report and recommendation adopted*, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019) (noting that, pursuant to *Siggers*, a prisoner "must argue that his receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing" and then must file a motion or application for rehearing if unsuccessful); *Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017) (concluding that the plaintiff failed to properly exhaust because "Harris-Bey did not allege retaliation at his misconduct hearing and, additionally, he did not appeal the finding of guilt

following that hearing as required by MDOC Policy Directive 03.03.150 at VVV"); *Alexander v. Ojala*, No. 2:16-cv-85, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL 6659133 (W.D. Mich. Nov. 10, 2016) ("Plaintiff could only exhaust the claim that he was given a retaliatory misconduct ticket by asserting this claim during his misconduct hearing.").

A limited exception to the foregoing rule exists where the misconduct ticket was dismissed without a hearing. In such circumstance, because the dismissal of the misconduct ticket "prior to the hearing foreclose[s] [the plaintiff's] opportunity to raise his allegations of retaliation in a misconduct hearing, on appeal or rehearing," the "remedy [i]s to file a grievance so that there could be administrative review of his allegations." *Parker v. Turner*, No. 20-12794, 2022 WL 722192, at *4 (E.D. Mich. Mar. 9, 2022); *see also Ali v. Simmons*, No. 1:19-cv-126, 2020 WL 6597562, at *5 (W.D. Mich. May 5, 2020), *report and recommendation adopted in part*, 2020 WL 5626921 (W.D. Mich. Sept. 21, 2020) (holding that although the misconduct ticket was dismissed without a hearing, the plaintiff could have exhausted his claim that the misconduct was retaliatory by filing a grievance). As noted in *Claybron v. Montgomery*, No. 21-cv-11953, 2024 WL 2271823 (E.D. Mich. May 20, 2024), "the Sixth Circuit has explained, '[a]s distinct from the outcomes of misconduct *hearings*, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130.'" *Id.* at *5 (quoting *Reynolds-Bey v. Harris*, 428 F. App'x 493, 501 (6th Cir. 2011) (emphasis in original)).

  **A.**  **August 13, 2022 Misconduct Ticket**

Because the August 13, 2022 misconduct ticket was pulled before a misconduct hearing was held (ECF No. 25-4 at PageID.241; ECF No. 25-5 at PageID.265), Plaintiff needed to exhaust his retaliatory misconduct claim through the normal three-step grievance process. Defendants note,

7

correctly, that Plaintiff's Step III report shows that he filed five Step I grievances between August 13 and September 13, 2022, but none of those grievances concerned the August 13, 2022 misconduct ticket. (ECF No. 25-3 at PageID.214–38.) In response, Plaintiff says that the five grievances Defendants cited in their brief were not relevant to his claim regarding the August 13, 2022 misconduct ticket. (ECF No. 29 at PageID.299.) Instead, Plaintiff asserts that eight other grievances—seven filed in March 2023 and one filed in July 2023—exhausted his retaliatory misconduct ticket claim. (*Id.* at PageID.300.) As support, Plaintiff submitted the Step II/III appeal forms for the cited grievances, but not the Step I grievances describing the issues being grieved. (ECF No. 29-1 at PageID.310–17.) In their reply, Defendants attached all of the grievance documents, including the Step I grievances that Plaintiff failed to submit. (ECF No. 31-1.) These grievances could not have exhausted Plaintiff's claim that Defendant VanderWeil issued the August 13, 2022 misconduct ticket in retaliation for Plaintiff's protected conduct because they were filed more than six months after VanderWeil issued the misconduct ticket and, more importantly, they concerned different issues. Accordingly, Defendants have shown that Plaintiff failed to exhaust this claim.

      **B.**      **January 29, 2023 Misconduct Ticket**

Because Plaintiff received a hearing on this ticket, he was required to exhaust his retaliation claim by raising retaliation during the misconduct hearing and in his request for rehearing. In support of their contention that Plaintiff did not exhaust this claim, Defendants submit the February 17, 2023 Misconduct Hearing Report and Plaintiff's March 2, 2023 Request for Rehearing. (ECF No. 25-5 at PageID.271–72, 280.) Citing the Misconduct Hearing Report, Defendants note that Plaintiff did not raise the issue of retaliation during the hearing because it is not mentioned in the

8

report. Defendants also note that Plaintiff did not claim in his Request for Rehearing that the misconduct ticket was retaliatory. (ECF No. 25 at PageID.192–93.)

Plaintiff responds that he did raise the issue of retaliation during the misconduct hearing but the ALJ failed to note it in the hearing report. (ECF No. 29 at PageID.300.) Even accepting Plaintiff's version as true with regard to the misconduct hearing report, Plaintiff fails to show that he raised the issue of retaliation *with regard to the misconduct ticket* in his Request for Rehearing. While Plaintiff argued that the ALJ gave him a sanction of 60 days in retaliation for Plaintiff's challenge to the accuracy of the written misconduct ticket (ECF No. 25-5 at PageID.283), Plaintiff did not make this argument with regard to the misconduct ticket, itself. Accordingly, Defendants have carried their burden of showing no genuine issue of fact that Plaintiff failed to exhaust his claim pertaining to the January 29, 2023 misconduct ticket.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 24) and **dismiss** Plaintiff's claims **without prejudice** for failure to exhaust his administrative remedies.

Dated: March 24, 2025  /s/ Sally J. Berens  
SALLY J. BERENS  
U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

9